UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| BERNICE McCLINTON CARTER, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-804 |
| ) | |
| v. ) | Honorable Joseph G. Scoville |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **OPINION** |
| Defendant. ) | |
| _____) | |

       This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On July 17, 2006, plaintiff filed her applications for benefits alleging a July 14, 2006 onset of disability. (A.R. 129-37). Her claims for DIB and SSI benefits were denied on initial review. (A.R. 55-63). On May 15, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 28-52). On July 29, 2009, plaintiff amended her claims to allege a January 1, 2008 onset of disability. (A.R. 206). On September 17, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 19-27). On June 10, 2010, the Appeals Council denied review (A.R. 9-13), and the ALJ's decision became the Commissioner's final decision.

       On August 13, 2010, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have

a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 10). Plaintiff raises the following issues:

1. The ALJ committed reversible error in failing to find that plaintiff's impairments met or equaled the requirements of "Listings 12.05B, 12.05C and 12.05D, contrary to 20 C.F.R. 404.1526 and 20 C.F.R. 404.1599, Subpart P, Appendix A and SSR 96-5p;" and

2. The ALJ's findings that plaintiff retained the RFC to perform medium work and that there are jobs in the regional economy she can perform are not based on substantial evidence.

(Plf. Brief at iii, Statement of Errors, docket # 7, ID# 429). Upon review, the court finds that the issues raised by plaintiff do not provide a basis for disturbing the Commissioner's decision. The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see*

*McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003).

### Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on July 14, 2006, her alleged onset of disability, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 21). Plaintiff had engaged in substantial gainful activity through December 31, 2007. Thus, she was not disabled at any time before January 1, 2008, her amended onset date. (A.R. 21) (citing 20 C.F.R. §§ 404.1571, 416.971).

Plaintiff had the following severe impairments: "degenerative joint disease of the left shoulder; depressive disorder NOS; anxiety disorder (possible PTSD); [and] borderline intellectual

functioning (BIF)." (A.R. 21). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 21-24). Plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the exertional requirements of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) with the following nonexertional limitations: only frequent reaching (including overhead) with the left upper extremity; and limited to work involving simple, routine, repetitive tasks only.

(A.R. 24). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> The claimant indicated she could not work anymore because of foot, leg and arm pain. However, she did testify that she continues to babysit her daughter's children since her daughter got out of prison. This allows her daughter to work. Furthermore, she testified that she only left her job (performed at the level of substantial gainful activity) at the alleged onset date because her daughter went to prison and she "chose family over job" by taking care of her grandchildren. While certainly commendable, this choice does not suggest she was incapable of continuing in her long-standing job. The claimant could not articulate why she is now physically or mentally unable to perform full-time work.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> There is little objective evidence of severe physical problems. There is x-ray evidence of a mild shoulder impingement, which has been treated conservatively, but nothing else (Exhibit 14F)[A.R. 380-82]. A consultative examination could not find a severe physical impairment (Exhibit 4F)[A.R. 232-36]. However, giving the claimant the benefit of every doubt, the undersigned finds that her shoulder impingement will limit her ability to lift heavy objects as well as reach. As noted above, the claimant is mentally limited to simple, routine, repetitive tasks only.

(A.R. 25). The ALJ found that plaintiff was unable to perform her past relevant work as a packer of agricultural produce or childcare monitor because those jobs require more than frequent reaching.

(A.R. 25).  Plaintiff  was 52-years-old as of her amended onset of disability date and 54-years-old as of the date of the ALJ's decision.  Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as an individual closely approaching advanced age.  (A.R. 25). Plaintiff has a limited education and is able to communicate in English.  (A.R. 25).  The ALJ found that the transferability of work skills was not material to a determination of disability.  (A.R. 25). The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 35,250 jobs in the State of Michigan that the hypothetical person would be capable of performing.  (A.R. 46-48).  The ALJ found that this constituted a significant number of jobs.  Using Rule 203.19 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.  (A.R. 19).

**1.**

Plaintiff argues that she is entitled to DIB and SSI benefits because she met the requirements of listing 12.05.  (Plf. Brief at 14-21; Reply Brief at 2-4).  Upon review, the court finds that the ALJ correctly applied the law and that his findings that plaintiff did not meet or equal the requirements of listing 12.05 are supported by more than substantial evidence.

It is well established that a claimant must show that she satisfies all the individual requirements of a listing.  *See Elam*, 348 F.3d at 125; *see also Perschka v. Commissioner*, 411 F. App'x 781, 786-87 (6th Cir. 2010).  The listing must be read as a whole, and plaintiff had the burden of demonstrating that she met all parts of the listing.  "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203

(6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"Listing 12.05 describes circumstances in which mental retardation is severe enough to preclude gainful activity." *Turner v. Commissioner*, 381 F. App'x 488, 491 (6th Cir. 2010). "The structure of listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010); *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

The specific requirements of listing 12.05 are as follows:

> 12.05  Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A.  Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR

> D. A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  It was plaintiff's burden at step-3 of the sequential analysis to demonstrate that her impairment met or equaled all the requirements of listing 12.05.  *See Kyle v. Commissioner*, 609 F.3d 847, 855 (6th Cir. 2010).  It was her burden to prove that she met or equaled the listing's diagnostic description <u>and</u> one of the four severity criteria specified in parts A, B, C, or D.  *See Foster v. Halter*, 279 F.3d at 354.

During the administrative hearing, the ALJ advised plaintiff's counsel that, given plaintiff's work history, he faced an uphill battle in proving that she satisfied listing 12.05's diagnostic description requirement of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period before age 22:

> ALJ:   Well, I don't think that's particularly relevant in this case, since she has a strong work record.  She obviously can work.  She quit not because of any kind of problems mentally or anything like that.  It doesn't really raise the issue of disability on that, but --
>
> ATTY:   Well, I wouldn't argue -- I wouldn't argue with what you say about her work history.  Potentially it could be an issue under 12.05 depending on the IQ scores.
>
> ALJ:   Well, actually she's working at SGA levels and she has been for many years.  During that period she clearly wasn't disabled.  I see what you're saying.  It still possibly could be listing level, but it would have to be a pretty high standard when you can't find -- what's the term? The deficiencies in adaptive functioning, I think it was.  Anyway, all right, well, I think I've got what I need.

(A.R. 42).

The ALJ found that plaintiff did not satisfy listing 12.05's diagnostic description:

> The undersigned considered the claimant's intellectual capacity under listing 12.05. Subsequent to the hearing the claimant was tested by Dr. Morry Edwards using the WAIS-III. The claimant had the following valid IQ scores: verbal IQ 57; performance IQ 57; full scale IQ 57 (Exhibit 16F)[A.R. 391-95]. Dr. Edwards noted the claimant had similar scores on different tests in 1968 while in school (Exhibit 15F)[A.R. 383-90]. These scores place the claimant squarely within the statistical criteria to meet listing 12.05B. However, the undersigned notes that the claimant has managed to overcome her intellectual deficits and has developed adaptive skills which allowed her to be employed in unskilled occupations for many years (Exhibit 4D)[A.R. 146-47]. Therefore, she is not mentally retarded under the definition in the introductory paragraph of listing 12.05.

(A.R. 22).

Plaintiff's argument that she was not required to prove deficits in adaptive functioning before age 22 is frivolous. The argument is based on the more than two-decade-old Sixth Circuit decision in *Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990), which interpreted a now superseded version of listing 12.05 as permitting a finding of disability where the claimant failed to satisfy both the diagnostic description and one of the four severity criteria. 905 F.2d at 924-25. This aspect of the *Abbott* decision was effectively overruled by the 2000 amendments to listing 12.05.

In 2000, the Commissioner amended the social security regulations to make pellucid that a claimant would not be found disabled under listing 12.05 unless she met the diagnostic description *and* one of the four sets of criteria. *See* 65 Fed. Reg. 50,746 (Aug. 21, 2000); *see also* 71 Fed. Reg. 10,419, 10,423 (Mar. 1, 2006) ([T]o meet listings 12.05 and 112.05, you must have a mental impairment that satisfies the criteria in the introductory paragraph of those listings (the so-called capsule definition) in addition to the criteria in one paragraph of the paragraphs that follow the capsule definition."). In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit

recognized that the 2000 amendments clarified that the claimant must satisfy listing 12.05's diagnostic description and one of the four sets of criteria:

> As the Commissioner has pointed out, recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria...." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) as amended by 65 Fed.Reg. 50746, 50776 (August 21, 2000).

*Foster v. Halter*, 279 F.3d at 354.  "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." *Id.* at 354.  Thus, it has been clearly established law in the Sixth Circuit for more than a decade that in order to be found disabled under listing 12.05, the claimant must satisfy the diagnostic description and any one of the four sets of criteria.  *See Foster v. Halter*, 279 F.3d at 354; *see also Turner v. Commissioner*, 381 F. App'x at 491; *Hayes v. Commissioner*, 357 F. App'x 672, 675 (6th Cir. 2009); *West v. Commissioner*, 240 F. App'x 692, 697 (6th Cir. 2007); *Carmack v. Barnhart*, 147 F. App'x 557, 560 (6th Cir. 2005); *Daniels v. Commissioner*, 70 F. App'x 868, 872 n.1 (6th Cir. 2003).

Plaintiff argues that the ALJ should have found that she had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period before age 22:

> In the present case, Ms. Carter has been in special education and had low IQ scores as a child.  Her work in the pickle factory had essentially been sheltered employment.  She is essentially functionally illiterate.  Even if adaptive functioning were considered, she does have deficits in adaptive functioning[.]

(Reply Brief at 3).  Plaintiff's argument is devoid of legal support and generally lacking in evidentiary support.  Further, plaintiff's burden at the judicial review stage is much higher than

pointing to evidence on which the ALJ could have based a finding in her favor. She must show that the finding that the ALJ made is not supported by substantial evidence. *See Jones v. Commissioner*, 336 F.3d at 477. Upon review, the court finds that the ALJ's factual finding that plaintiff did not suffer from the deficits in adaptive functioning required by listing 12.05 is supported by substantial evidence.

"Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Commissioner*, 240 F. App'x at 698. Plaintiff's counsel did not elicit any testimony from his client regarding her level of functioning before age 22. Plaintiff did present a 1963 psychological report indicating that she had achieved IQ test scores which ranged from average to mentally defective:

> On this administration of the Stanford Binet, this 12-7 year old girl's MA was 6-6; her IQ was 56. This was a mentally defective quotient and reveals a mental growth of 13 months and a loss of 6 quotient points from prior testing 50 months ago. On the Performance Scale of the WISC, she received a 72; a borderline quotient. Her Goodenough Draw a Person Test yielded a MA of 9-3 and an IQ of 76; also classified as borderline. Her range of intellectual functioning extended from average to mentally defective.

(A.R. 389). The same report indicates that plaintiff was attending special education classes (A.R. 387), and the examiner's recommendation was that plaintiff be placed in junior high the following fall. (A.R. 389-90). The only other school record plaintiff presented is a high-school transcript indicating that her grades were generally in the C or D range, and that she had problems with absenteeism. (A.R. 385-86). Plaintiff's IQ scores and her relatively poor grades did not establish the deficits in adaptive functioning required by listing 12.05. *See Hayes v. Commissioner*, 357 F. App'x at 677.

The ALJ found that plaintiff's claim of deficits in adaptive functioning was undermined by her "adaptive skills which had allowed her to be employed in unskilled occupations for many years." (A.R. 22). The ALJ's finding is well-supported. Plaintiff worked at Harrison Packing from 1993 through 2006, packing and processing pickles. (A.R. 192). She stopped working not because of any physical or mental impairments, but because her daughter went to prison. Plaintiff's substantial gainful activity as a childcare monitor precluded any finding of disability before December 1, 2008. (A.R. 21). Plaintiff's ability to perform substantial gainful activity is relevant to whether she had the deficits in adaptive functioning necessary to meet listing 12.05's diagnostic description. *See Cheatum v. Astrue*, 388 F. App'x at 575 n.2; *see also Gulch v. Commissioner*, No. 1:11-cv-21, 2012 WL 651731, at * 7 (W.D. Mich. Feb. 28, 2012) ("[T]he fact that Plaintiff maintained employment throughout much of her adult life is inconsistent with the conclusion that she is mentally retarded" and "indicates that Plaintiff did not experience deficiencies in adaptive functioning prior to age 22, or thereafter for that matter."). Plaintiff's daughter was released from prison and regained custody of her children. Plaintiff continued to provide childcare for her grandchildren in 2008 and 2009, but the compensation she received fell short of substantial gainful activity. (A.R. 21, 33-36, 194-205).

Nothing in the record supports the argument that plaintiff's work in the pickle factory was "sheltered employment." *See* 20 C.F.R. §§ 404.1573(c), 416.973(c). Counsel did not elicit any testimony from plaintiff regarding her pickle factory work, much less obtain testimony establishing that the work was sheltered employment. (A.R. 30-52). The VE did not classify any of plaintiff's past relevant work as sheltered employment. Plaintiff was not "essentially functionally illiterate." She had a limited education and was able to communicate in English. (A.R. 25). *See* 20 C.F.R. §§

-11-

404.1564(b), 416.964(b); *see also Caudill v. Commissioner*, 424 F. App'x 510, 514 (6th Cir. 2011). The court finds that the ALJ applied the correct legal standard, and his factual findings that plaintiff did not meet or equal the requirements of listing 12.05 are supported by more than substantial evidence.

**2.**

There is no developed argument corresponding to plaintiff's second statement of error: "The ALJ's Findings that Plaintiff Retained the RFC to Perform Medium Work and that there are Jobs in the Regional Economy She Can Perform are Not Based on Substantial Evidence." (Plf. Brief at iii, docket # 7, ID# 429). The conclusion of plaintiff's brief includes a statement that the ALJ "failed to consider all Ms. Carter's documented impairments in determining her residual functional capacity, contrary to applicable case law and regulations." (*Id.* at 20, ID# 450). Plaintiff does not identify the impairments or the legal authority that the ALJ purportedly overlooked. She provides a footnote expressing her dissatisfaction with the ALJ's factual finding regarding her RFC and the weight that he gave to the opinions of a therapist and consulting psychologist (*Id.* at 19 n.2, ID# 449), but fails to provide any supporting legal authority. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Allen v. Highland Hosp. Corp.*, 545 F.3d 387, 406 (6th Cir. 2008); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

Assuming *arguendo* that these issues had not been waived, they are meritless. RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *see Kornecky v. Commissioner*, 167 F. App'x at 499. RFC is an administrative finding

of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *see Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). The court finds that the ALJ's factual finding regarding plaintiff's RFC is supported by more than substantial evidence.

Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence. *Mullins v. Secretary of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011); *Vance v. Commissioner*, 260 F. App'x 801, 807 (6th Cir. 2008). "In formulating a residual functional capacity, the ALJ evaluates all the relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Commissioner*, No. 10-3820, 2012 WL 616661, at * 2 (6th Cir. Feb. 27, 2012). Here, the ALJ considered the opinions expressed by Therapist Anne Cooper and Consultative Psychologist Morry Edwards and found that they were entitled to little weight. (A.R. 23). Plaintiff's disagreement with the weight the ALJ found was appropriate for these opinions does not provide a basis for overturning the Commissioner's decision.

**Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:  March 26, 2012	/s/  Joseph G. Scoville
	United States Magistrate Judge